FILED
SUPERIOR COURT
OF GUAM

2022 JUL 25 AM 9: 50

CLERK OF COURT

BY:_____

## IN THE SUPERIOR COURT OF GUAM

| | |
|---|---|
| THE PEOPLE OF GUAM,<br><br>vs.<br><br>TOMMY MANIBUSAN LEFEVER,<br><br>Defendant. | CRIMINAL CASE NO. CF0183-21<br><br>**DECISION AND ORDER** |

## INTRODUCTION

This matter came before the Honorable Vernon P. Perez on April 13, 2022, for hearing on Defendant Tommy Manibusan Lefever's ("Defendant") Motion to Suppress. Assistant Attorney General Sean E. Brown was present on behalf of the People of Guam ("the Government") and Defendant was present with counsel, Assistant Public Defender John P. Morrison. Having reviewed the pleadings, the arguments presented, and the record, the Court now issues the following Decision and Order.

## BACKGROUND

Defendant is charged with one count of Possession of a Schedule II Controlled Substance (As a Third Degree Felony).[1] (Superseding Indictment, Jun. 25, 2021). This charge

---

[1] The Superseding Indictment also charged Vincent Leon Guerrero Borja, Jr. with (1) Possession of a Schedule II Controlled Substance (As a Third Degree Felony) – 2 Counts; (2) Vehicle Without Identification (As a Misdemeanor) – 2 Counts; (3) Attempted Destruction of Evidence (As a Misdemeanor); (4) Resisting Arrest (As a Misdemeanor); and (5) Reckless Driving (As a Petty Misdemeanor). (Superseding Indictment, Jun. 25, 2021). Co-Defendant Borja entered into a Deferred Plea Agreement (Adult Drug Court I) with the Government on February 8, 2022.

---

*People v. Lefever*
Case No. CF0183-21
Decision and Order

stems from allegations that Defendant was in possession of suspected methamphetamines on or about January 20, 2021. *Id.*

On January 21, 2022, Defendant filed a Motion to Suppress. On February 4, 2022, the Government filed its Opposition.

On April 13, 2022, the Court heard sworn testimony from Guam Police Department Officer Aren Fabila ("Officer Fabila") and Defendant. At the conclusion of the hearing, the Court gave the parties leave to file proposed findings of fact and conclusions of law. On May 11, 2022, Defendant filed his proposed findings of fact and conclusions of law. The Court did not receive any proposed findings from the Government. The Court subsequently placed the matter under advisement.

At the Suppression Hearing, witnesses testified to the following:

1. On January 20, 2021, Defendant was the passenger in a brown Nissan Altima driven by Vincent Borja, Jr. Defendant testified that he and Vincent were running errands, which included a stop at the Upper Tumon branch of the Bank of Guam to get cash.

2. A traffic stop was effectuated by GPD Officer Tiffanie Rodrigues at the St. John's School parking lot because the vehicle did not have a license plate.

3. Officer Fabila was driving a separate GPD patrol vehicle. Officer Fabila testified that he pulled in to help Officer Rodrigues after he saw she was effectuating a traffic stop.

4. There was no evidence that the two officers spoke prior to approaching Mr. Borja's vehicle.

5. Officer Fabila testified that Officer Rodrigues approached the driver of the vehicle, later identified as Mr. Borja, and he approached the front passenger, later identified as Defendant.

6. There is a factual dispute between what happened after Officer Fabila approached Defendant's window.

7. Officer Fabila testified that as he was approached the passenger side of the vehicle, he observed Defendant bend down and place something under his seat. Officer

Fabila asked Defendant what he put under his seat. Defendant denied placing anything under.

8. Officer Fabila noticed Defendant had a bag on his lap.

9. Officer Fabila asked Defendant if he had any weapons on him, to which Defendant replied no. Officer Fabila noticed Defendant then grab the bag on his lap and pull it towards the left side of his body.

10. Officer Fabila asked Defendant if he had anything in the fanny pack. Defendant responded "just his daily carry." Officer Fabila asked Defendant what his daily carry was, to which Defendant responded "you don't need to know that."

11. Officer Fabila then asked Defendant to step out of the vehicle and told Defendant he would be conducting a pat down for weapons, to which Defendant complied with.

12. Officer Fabila told Defendant to place his hands on the trunk. At this point, Officer Fabila heard Officer Rodrigues struggling with the driver of the vehicle and a clinging noise. Officer Fabila later discovered that the clinging noise was a glass pipe falling to the ground.

13. Officer Fabila instructed Defendant to go on the ground.

14. Defendant yelled "for what." Officer Fabila stated he told Defendant he was being detained and that he needed to assist the other officer.

15. Officer Fabila testified that Defendant took a step in the opposite direction, which made it seem like he was going to run away.

16. Officer Fabila testified that he grabbed Defendant's arm and ordered him to lay on the ground and to put his hands behind his back. Officer Fabila secured him in handcuffs and then went to help Officer Rodrigues. Defendant remained face down on the ground with his hands cuffed behind his back.

17. Officer Fabila testified that he believed if he didn't grab Defendant's arm, Defendant would have run away.

18. Officer Fabila testified that the driver of the vehicle, Mr. Borja, did not comply with Officer Rodrigues's instructions.

19. Officer Fabila testified that he went to assist Officer Rodrigues and that he had to tase Mr. Borja to get him to comply.

20. Officer Fabila testified that after both Defendant and Mr. Borja were detained, he saw Defendant's fanny pack on the ground. Officer Fabila testified that the fanny pack was placed back in the vehicle so that none of the students in the area would pick it up while Defendant was escorted to the patrol car. Officer Fabila testified that if it had been later at night and no one was around, he would have just left the fanny pack on the ground. Officer Fabila testified he was concerned about the fanny pack because he still did not know if there was a weapon inside it.

21. Officer Fabila testified that after Defendant and Mr. Borja were placed in separate patrol vehicles, Officer Pewtress (sp) arrived on scene.

22. Officer Fabila testified that at this point, Mr. Borja had been placed under arrest.

23. Officer Fabila and Officer Pewtress searched the Altima as a search incident to Mr. Borja's arrest. Officer Fabila testified that he did not believe Officer Pewtress knew that the fanny pack had been placed back inside the vehicle prior to the search.

24. Officer Fabila testified he found a small re-sealable bag under the passenger seat which contained a crystal like substance which he suspected to be methamphetamines. Officer Fabila testified that it was not tested at the scene, because they did not have any test kits on hand.

25. Officer Fabila testified that Mr. Borja was attempting to crush what appeared to be a make-shift glass pipe, which was commonly used to smoke methamphetamine.

26. Officer Pewtress searched the fanny pack and found a pipe and another re-sealable bag with suspected methamphetamine. A large amount of U.S. currency and Defendant's ID were also found in the bag later on.

27. Officer Fabila testified Defendant was arrested after the search of the vehicle and search of his fanny pack.

28. Defendant testified that Officer Fabila approached him. Defendant testified that Mr. Borja was already out of the vehicle while he was speaking to Officer Fabila.

29. Defendant testified that Officer Fabila asked him if he had any weapons on him. Defendant testified that he said he didn't have any weapons, and that he responded "no" when asked if his fanny pack could be searched.

30. Defendant testified that Officer Fabila drew his gun on him and yelled at him to get out of the car and go on the ground, to which he complied.

31. Defendant testified that he was not placed in handcuffs.

32. Defendant testified that he waited on the ground, without handcuffs, until Officer Fabila returned. Defendant testified that he did not try to run away.

33. Defendant testified that Officer Fabila opened his fanny pack and went through it while he was still lying on the ground. Defendant testified that he left the fanny pack on the car seat when he exited the vehicle.

34. Defendant testified that he was placed in handcuffs after his fanny pack was searched.

35. Defendant testified he didn't know what Mr. Borja was doing or hear his interaction with Officer Rodrigues. Defendant testified that he saw Mr. Borja make a move, what appeared to be wiggling. Defendant testified he didn't hear Mr. Borja being tased.

36. When asked if he believed the police put the glass pipe and re-sealable baggie in the fanny pack, Defendant responded no.

## DISCUSSION

Defendant moves the Court to suppress all evidence seized in this matter as it was obtained as the result of an unlawful search of Defendant's personal effects. *See generally,* Mot. Suppress, Jan. 21, 2022. Defendant argues that while GPD officers may have been able to search the vehicle as to Mr. Borja's alleged possession offense, "GPD officers were on actual notice that the fanny pack in question belonged to the Defendant and that he'd specifically withheld permission to search it." (Deft. Proposed FFCL at 7, May 11, 2022).

The Fourth Amendment to the U.S. Constitution guarantees "[t]he right of people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."

It is made applicable to Guam via section 1421(b)(c) of the Organic Act of Guam. *People v. Chargualaf*, 2001 Guam 1 ¶ 4. The "mandate of the Fourth Amendment requires adherence to judicial process, and searches conducted outside the judicial process, without prior approval by judge or magistrate, are *per se* unreasonable under the Fourth Amendment – subject to only a few specifically established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967) (internal citation and alterations omitted). Among the exceptions to the warrant requirement are a search incident to lawful arrest when it is reasonable to believe the vehicle contains evidence of the offense of arrest, *Arizona v. Gant*, 556 U.S. 332 (2009), and valid consent, *Schneckloth v. Bustamonte*, 412 U.S. 218 (1973).

In *Gant,* the Supreme Court concluded "that circumstances unique to the vehicle context justify a search incident to a lawful arrest when it is reasonable to believe evidence relevant to the crime of arrest might be found in the vehicle." *Gant*, 556 U.S. at 343 (internal quotation marks and citation omitted). "In many cases, as when a recent occupant is arrested for a traffic violation, there will be no reasonable basis to believe the vehicle contains relevant evidence. But in others, . . . the offense of arrest will supply a basis for searching the passenger compartment of an arrestee's vehicle and any containers therein." *Id.* at 343-44.

In this case, the search incident to arrest was conducted based on the driver of the vehicle, Mr. Borja's, arrest. Prior to his arrest, Mr. Borja had attempted to destroy evidence of a glass pipe with suspected methamphetamines that was on his person and was not complying with Officer Rodrigues' instructions. Under *Gant,* this was sufficient to justify a warrantless search of the Altima for evidence of methamphetamines.

> When there is probable cause to search for contraband in a car, it is reasonable for police officers-like customs officials in the founding era-to examine packages and containers without a showing of individualized probable cause for each one. A passenger's personal belongings, just like the driver's belongings or containers attached to the car like a glove compartment, are "in" the car, and the officer has probable cause to search for contraband *in* the car.

*Wyoming v. Houghton*, 526 U.S. 295, 302 (1999) (emphasis in original). Thus, the Supreme Court held that "police officers with probable cause to search a car may inspect passengers'

belongings found in the car that are capable of concealing the object of the search." *Id.* at 307. The fanny pack was searchable because it could have concealed evidence of methamphetamines. Further, although Officer Fabila had knowledge that the fanny pack belonged to Defendant, there is no evidence before the Court indicating that Officer Pewtress, who first searched the fanny pack, had prior knowledge that the bag belonged to Defendant and not Mr. Borja.

## CONCLUSION

For the foregoing reasons, the Court hereby DENIES Defendant's Motion to Suppress. A Status Hearing is set for August 23, 2022 at 10:00 a.m.

**IT IS SO ORDERED** this 25th day of July, 2022.

_____
HONORABLE VERNON P. PEREZ
Judge, Superior Court of Guam